We're going to move now to Appeal 25-2565, Wisconsinites for Alternatives to Smoking versus Casey. Mr. Frazer, we're going to begin with oral argument from you. May it please the court. Your Honor, I'm going to plan to focus my comments this morning on the first preliminary injunction factor, likelihood of success on the merits, but I'm obviously happy to answer any questions on the other three factors. The District Court erred as a matter of law in finding that 21 U.S.C. 337A does not impliedly preempt a state law which seeks to enforce the FDCA's premarket tobacco authorization requirements for new tobacco products. Section 337A says that only the federal government can bring actions to enforce the FDCA with one exception for certain food products. The District Court acknowledged that Section 337A impliedly preempts state law which seeks to enforce FDA requirements for other FDA-regulated products such as drugs, foods, and medical devices. But then the District Court decided that Congress intended to carve tobacco products out of 337A because in 2009, when Congress amended the FDCA via the Tobacco Control Act, Congress included a clause that preserved the state's right's historic police powers to prohibit the sale of tobacco products. The problem with the court's analysis is that all products that are regulated under the Food, Drug, and Cosmetic Act are products for which the states have historically had police powers, including the power to prohibit the sale within their state's borders. I think this is most directly seen if you look at the original Food, Drug, and Cosmetic Act passed in 1938. That original statute had what is now 337A that said only the FDA or only the United States can enforce this act. It also had a premarket approval requirement for drugs. In order to market a new drug in the United States, you had to meet the application of the FDA and show that the drug was safe and there were other requirements. There were no preservation clauses in the original FDCA. There were no preemption clauses, express preemption clauses, in the original FDCA. But no one would have argued at that point in time that because FDA had set up a premarket approval requirement, that Congress had stripped the states of their historic police powers to regulate the sale of drugs within their borders. This was demonstrated just earlier this year in 2025, the Fourth Circuit in the Gen BioPro case that we cited in our briefs, dealt with the West Virginia statute which bans the sale of the abortion pill which FDA has approved. And the manufacturer for that drug made a preemption argument, implied preemption, saying that while the FDA has approved this drug, so you are encroaching on the FDA's authority. And the court said, well, the Food, Drug, and Cosmetic Act leaves to the states the authority to prohibit the sale of products within their borders. That brings up a point. There you had the federal government approving a drug and the state coming in and taking a contrary position. Here, you have products that arguably violate a federal regulation being sold. And in the first instance, we need to look at our jurisdiction. In HAARP advertising, we held that a village ordinance that prohibited a particular sign didn't cause a plaintiff concrete injury because a separate ordinance still would have prohibited the sign. Do we have a problem with jurisdiction here in the sense of redressability if these products are prohibited regardless of any action by the district court below? I don't think so, Your Honor. So it's clear that our clients are being injured by this statute. They are unable to sell products that they were able to sell prior to this point in time. I think when analyzing this issue in the context of the Food, Drug, and Cosmetic Act and in jurisdiction, the court needs to recognize, which the district court did as well, that the FDA exercises enforcement discretion in a lot of different areas. There are a lot of products on the market today, probably within 100 feet of this courthouse at a store, that do not comply with the Food, Drug, and Cosmetic Act. If you go into any CVS, there are over-the-counter drugs that are not in compliance with the law. Saying that a party cannot be injured in a legal dispute over its ability to sell those products would really create a problem in terms of jurisdiction and regressibility for all sorts of products. I'll give you an example. The FDA, because of problems with baby formula supply in the United States over the past few years, has exercised enforcement discretion and allowed products from overseas to be brought into the United States, even though those products don't comply with the FDCA. Under the state's theory here, you could have somebody suing under a supply contract that they didn't get what they were promised under the contract, and the defendants could say, well, you know, the products aren't legal anyway, so you haven't been injured. You don't have the right to get these products. I think in the context, when we're not talking about, when we're talking about FDA-regulated products, I think trying to set up a jurisdictional test, which requires, and the district court, I like the way the court described this is, I don't know if it was perfection with federal standards or whatever. You could often find some problem, believe me, I know the FDCA really, really well from my prior experience. You can always find a violation with an FDCA-regulated product, and I think trying to set up a jurisdictional test at that level is just unworkable. Counsel, going to 387P, the preservation clause, preemption clause, savings clause, the preemption clause prohibits a state or one of its subdivisions from establishing a requirement that is different from or in addition to. What's notably absent is kind of, is identical to. And there seems to be some cases that talk about when there's concurrent jurisdiction to enforce the same standard, that that doesn't necessarily raise the type of preemption concerns that there might be if the state were trying to enforce a different standard. Here, I think the argument has been made that, in fact, the state is trying to basically enforce the same standard that the FDA is requiring. What is your best authority for the argument that implied preemption is appropriate even when the state standard mirrors or is identical to the medical standard? I think the authority I would rely on, Your Honor, the cases we cited at page 28 of our opening brief, those cases deal with medical devices. And the Food, Drug, and Cosmetic Act has an express preemption provision for Class III medical devices that uses the same language that is used in the express preemption provision here. And if you look at the cases we've cited there, what the courts have said is, okay, you can get past that, the preemption clause, and the state's standard is identical, but then you have to look at 337A and say, would this still be a violation of state law if the FDCA did not exist? So what the courts have done in those cases is they have prevented the states from doing what the state is trying to do here, which is say, well, we're looking at, we know we can't enforce this provision of the FDCA, so we'll just make a mirror image of it and enforce it that way, which at the end of the day makes 337A meaningless and cannot be what Congress intended when it passed 337A. I think I want to focus or, I don't know if the state and... So I'm sorry, if I could just follow up on that. So let's assume as a hypothetical matter that the FDA announces tomorrow that it's adopting a new policy where somehow it got all this incredible funding from Congress and that it now has the resources to go and enforce every single violation of the TCA where there's no market authorization, okay? In that instance, would the implied preemption doctrine still apply because of 337A? Would that be argument? I believe it would, Your Honor. Our position and the position of the United States in filings that's made in amicus briefs is even when the FDA has enforced a provision against a particular party, the FDA considers it to be a violation of 337A if another party then comes in and tries to bring a follow-on action to enforce the same provision. Because when the FDA enforces, it has a range of options as to what it will do to those parties that are violating the statute. And it does a bit of analysis and it really thinks about what it's going to do. It's not a one-size-fits-all punishment or, you know, resolution with that defendant. So that's the way the FDA has interpreted. They see that as a problem if other parties are coming in to piggyback on what the FDA is doing. And I, as we put in our reply brief, I think that's what Justice Stevens, I think he had the view or the kind of the position that this, that would be, that would allow what you're proposing here. But that only got two votes. I mean, the rest of the court didn't go along with that. So I don't think that that would change the calculus. And it wouldn't change the calculus, Your Honor, because when you look at the, and we've cited in our briefings, the letters that the FDA sent to the International Trade Commission in 2023 and to R.J. Reynolds in 2023, make clear that the FDA is constantly changing based on conditions on the ground, what its enforcement priorities are. So the FDA could go after all those problems. And I think the point... The difficulty, though, that, the concern I have with that, and perhaps you can educate me on this, is that it seems like you're saying that the state statute conflicts, might conflict with FDA's kind of prosecutorial discretion or the way, you know, it wants to prosecute these cases. But it, you know, it seems like preemption, we're looking at statutes and laws and regulations and things that have the effect of law. If we just rely upon prosecutorial discretion, then wouldn't basically everything be preempted? I mean, I think that's kind of the point that the panel was trying to make in the, is it the Zyler case? That, you know, it's, if you ground preemption on this notion that you might interfere with the way the government prosecutes things, then, you know, that just casts a preemption, you know, not just too broadly. And I was wondering what your response to that is. I disagree with that. And we disagree with the Zyler opinion, which is before the Supreme Court announced it. And we'll see what happens with that. The problem here is that that's not what's, we're not talking about a situation where the state, like some states, as is noted in the briefing, have just decided they're going to ban flavored vaping products. You just can't buy them, no matter what the FDA does. And that is not preempted because that is not basing its decision on what the FDA is doing. So this does, to your point, Your Honor, you said, you know, maybe tomorrow the FDA announces that it's got all this money and it's going after everyone on the market. I highly doubt that. I don't think that the FDA, and I'm not talking about the money, I don't think if the FDA had a magic wand today that would just take all of every flavored vaping product off the market, it would do that. Because that would be a disaster, because the FDA knows that that's going to drive some people back to combustible cigarettes, which are more harmful than vaping products. Do I have to reserve the remainder of your time? Yes. Thank you, Mr. Fraser. We'll now move Ms. Gibson to you for a final argument on behalf of the appellee. Good morning, Your Honor. The District Court got it right in denying the preliminary injunction here, and we ask the Court to affirm that today. First, I'll just touch briefly on standing. This is not a case like the baby food formula case that they relied on in the briefs, where the FDA made a considered explicit decision not to treat a product as illegal because there was a national shortage of baby formula and they needed to expand the universe of products available to consumers. Here we have no factual evidence in the record to support that any of the hundreds of products that they would like to sell are actually things that the FDA wants to see sold. And we've got lots of good evidence in the record that the FDA's approach in 2024 and 2025 in particular is the opposite. The FDA does not want these products on the market. They're seizing them, tens of millions of dollars in several seizures just over the last year. And they tell retailers and manufacturers right on their website, there is no safe harbor. So the whole factual premise of this non-enforcement is not supported by the record, and that affects two parts of the case. It affects standing because their theory that, well, we're not perfectly complying with the law, but that shouldn't affect our standing, that's not your factual scenario here. This product is flat out illegal under federal law, no matter how this case comes out. So the cases they talked about in their brief, like Iowa and Farm is totally legal, that's not the scenario here. And that's why there's no Article III jurisdiction. Moving on to the Tobacco Control Act. But under that rationale, no one would have Article III standing where a statute mirrors federal standards. Isn't that right? I guess it would be hard to imagine what the claim might be. I mean, because the argument will always be that they don't have a right to produce it because the federal, because they don't meet the federal standards, and therefore they can't challenge our state statute on preemption grounds. Sure. I mean, they have different remedies. One thing they'd be able to do is go to state court and raise preemption as a defense. Remember, preemption is not a federal basis for federal jurisdiction on its own anyway. So they can raise it as a defense in a state court enforcement proceeding, if that ever were to happen. Obviously, they can challenge whether the FDA should have approved the product, and we know there are lots of petitions for judicial review out there by vape manufacturers who want more products to be approved, that the FDA is, as we saw from the wages and white line case this April, is en masse disapproving. So going to the Tobacco Control Act, which I understand why the appellants don't want to talk about it, when Congress decided to wade into the field of tobacco regulation, which was something that the states and local governments had done for 100 years, they were really careful. They took a lot of time to create these specific provisions and said in the area of tobacco sales regulation that the states and local governments were still free to enact regulations that were even more stringent or in addition to anything that the federal law did. And we think that that answers the question, period, that you're not even in 337A land because Congress has told the states that they can act state laws like Wisconsin and many other states did here as well, as the court can see from the other cases litigating this preemption issue here. But even if there's still some piece of 337A left, it doesn't work the way that the appellants tell you it does. Now they've got a lot of string cited cases on page 28 and a lot of other places in their brief, but every single case involves a situation where a judge, it's usually in a tort case, is going to have to adjudicate whether there's a violation of some provision of the Food, Drug, and Cosmetic Act. The judge is going to have to get in there and say, is there a violation or not? That's never going to happen in a situation where a state decides to accept a federal permission. So we can all go all the way back to the Zook case, right, where you needed that license from the ICC and Wisconsin's law. You show up with your pre-marketing authorization order from the FDA, and we accept that. We don't look behind it to decide if they violated some provision of the Tobacco Control Act. We're like, great, you've got the order, you're done. None of the cases they cite are about tobacco sales regulations at all, except for that one Iowa case that's on appeal for the Eighth Circuit. But other than that, none of these cases are about tobacco. So first of all, we don't think we should even be in 337A. But even if we are, they are stretching 337A far beyond what it's been doing, what it's done in the past. And I think it's telling that the reply brief focuses on amicus briefs from the United States, where the court decided not to adapt the positions the United States was taking there. I also want to go to their, what I'm going to call their enforcement vibe argument that we see in there. Before you move on, could I ask you something? That certainly may be true for subpart A, that is the marketing authorization. Subpart B talks about whether electronic, when the electronic vaping device was marketed in the United States as of August 8th, 2016. Could there be a dispute as to that, that the regulated party might come to state court and say, look, you know, we did market it, and the state thinks we didn't. And so therefore, you think we're fine under subpart B. And so state court adjudicate that issue for us. Does that have the potential of creating some sort of conflict with an FDA termination as to the date of marketing? We don't think so, Your Honor. Again, we're looking for that piece of paper that they had put in an application and that it's still pending. The FDA actually maintains a list of those. Now, could there be things where people say, well, we didn't think we had to put it in an application or we have some reason? Perhaps we're ending up with fewer products that are on our list than could be, but that's okay, because the savings and preservation clauses tell us that we can have laws that are more stringent. So if we end, if there are some people out there who said, well, we didn't need to apply, so we didn't, they just don't have the piece of paper and we don't look behind that. Okay, so getting back to their enforcement vibe argument, we think that that's really too broad a net to cast. And that goes all the way back to Zook and also the Kansas v. Garcia case from the U.S. Supreme Court, where the court has been very clear that a simple disagreement about enforcement priorities between the feds and states isn't enough to find preemption. And then last, we just, to the extent this court even gets to the beyond the merits phase, which of course in our circuit, we don't find strong showing the merits, this court can stop right there. But if this court went on to the balancing of the equities, we think those strongly counsel against an injunction here. We have the harm to the state in enjoining a validly enacted state law. That law was passed in December 2023. And not only is that a regular old law, but it's a public health law that has taken products off the shelf. This is vast majority of this product. The facts are in the record. Flavored product that's really appealing to kids and teens. This is getting new vapors, new smokers into the market. And at least so far, what the FDA's experts are saying is that the public health risks for that new group of smokers outweighs any benefits to transitioning smokers who like bubble gum and birthday cake vape as a way to stop smoking. We also have the, you know, on the other side of the harms, we have the talents who are selling less product now. And that's what the district court found. But the deposition they told us, we didn't make, take any efforts to find different products. We didn't find, take any efforts to expand what we sell or to look for those legal products. And they told us that actively in these depositions took place like, I think a month before the law went into effect, they were still restocking illegal products. So the extent you're losing money on products you were buying up to the right second, you may be harmed, but the equities aren't in your favor. Next, we have their delay in bringing suit. Our law was enacted, as I said, in December of 23. They waited until eight weeks before it went into effect, which was September 2025. So they brought their PI in July of 2025. And the Supreme Court has told us, if you want the emergency extraordinary relief of a preliminary injunction, you've got to be diligent. You can't tell us you have an emergency when the emergency is of your own making and lack of diligence. They've never offered us a reason for that. In their briefs, they talk about lack of prejudice to the state. The cases they cite are about latches. Prejudice is relevant to a latches defense. It's not relevant to the question of entitlement to preliminary injunction under the equities factors. And finally, under Schindel, we also think they have unclean hands because what an injunction from this court or the district court would have done is to enable them to continue buying and selling a product that's illegal for sale under federal law. There are no further questions. Thank you, Ms. Gibson. Thank you so much. Mr. Frazier, we'll go back to you. We'll give you three minutes for rebuttal. Thank you, Your Honor. I appreciate it. First, on counsel's point on the baby formula example being different, the state's argument is that if a product is illegal, there can be no standing. When the FDA exercises enforcement discretion over any product, that does not make the product legal. Congress decides what's legal and what's illegal. The executive branch cannot say, well, we've decided this is legal and we're just going to let it on the market regardless of whether it complies with the statute or not. So that distinction doesn't make any sense when we're talking about whether there's standing or not. Counsel mentioned that we don't want to talk about the TCA. I'm very happy to talk about the TCA because it's important to look at the original TCA and what was Congress doing when it passed the TCA. This was the first time the federal government was going to regulate the sale of cigarettes other than labeling and taxes, things like that. And Congress passed the statute because cigarettes are bad. It's the only product that's legally on the market today that when used as intended, kills many of the people that it uses. Now you might think, well, why doesn't the government just ban cigarettes then? The TCA actually, and it's in 387G, I believe, 387 lowercase g, actually tells the FDA you cannot ban cigarettes, tells the FDA that you cannot require nicotine yields to be lowered to zero. And that's important when trying to figure out what the preservation clause is for in the TCA, where Congress was saying we're going to allow some of these products to remain on the market. But if you want to go beyond that states, you are free to ban cigarettes if you want to. You are free to reduce nicotine levels to zero if you want to. The TCA specifically leaves the authority to the secretary to ban menthol flavored cigarettes, but does not require him to do that. But states could be free to do that as well. The TCA in section 387 lowercase a-1 required FDA to adopt regulations that the FDA had tried to adopt in the 90s when FDA tried to regulate cigarettes as a drug, which set a minimum purchase age of 18 to buy cigarettes. The TCA required FDA to readopt those regulations, but the preservation clause, what it does is it allows states to raise that rate age to 21 if they wanted to. I'm running out of time here. So any questions, Your Honor? No, thank you very much. Thank you, Mr. Fraser. Thank you, Ms. Gibson. The case will be taken under advisement.